IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY GOOD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:17-cv-2967-M-BN |
| | § | |
| PROF-2013-S13 LEGAL TITLE TRUST | § | |
| IV, BY U.S. BANK NATIONAL | § | |
| ASSOCIATION, AS LEGAL TITLE | § | |
| TRUSTEE; FAY SERVICING, LLC; | § | |
| WELLS FARGO BANK, NATIONAL | § | |
| ASSOCIATION; ARIS COOK; and | § | |
| COUCH ENTERPRISES, LP, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn. *See* Dkt. No. 3.

Plaintiff Anthony Good filed an Original Petition, Application for Temporary Restraining Order, and Request for Disclosure in County Court at Law No. 5, Dallas County. *See* Dkt. No. 1 at 1. Defendants Prof-2013-S3 Legal Title Trust IV, by U.S. Bank, National Association, as Legal Title Trustee ("Trustee"); Fay Servicing, LLC; Wells Fargo Bank, National Association; Aris Cook; and Couch Enterprises, LP then removed the case to this court. *See id.*

After surviving a Motion to Remand [Dkt. No. 12], *see* Dkt. No. 29, Trustee and Fay filed a Motion for Summary Judgement [Dkt. No. 32], to which Plaintiff responded,

*see* Dkt. No. 44, and in support of which Trustee and Fay filed a reply, *see* Dkt. No. 47.

Wells Fargo filed a separate Motion for Summary Judgement [Dkt. No. 48] against Plaintiff, to which Plaintiff responded, *see* Dkt. No. 52, and in support of which Wells Fargo filed a reply, *see* Dkt. No. 57. Further, Wells Fargo filed an Objection to, and Motion to Strike Portions of Plaintiff's Summary Judgment Declaration [Dkt. No. 58], to which Plaintiff responded, *see* Dkt. No. 61, and Wells Fargo then filed a reply, *see* Dkt. No. 62.

This case turns on whether the foreclosure of Plaintiff's property violated the law. Plaintiff brings claims against Trustee, Fay, and Well Fargo for (1) violating the Real Estate Settlement Procedure Act, (2) violating the Texas Debt Collection Acts, (3) wrongful foreclosure, and (4) negligent misrepresentation. *See* Dkt. 1, Ex. G, at 10-21. Plaintiff also brings claims against Couch Enterprises, LP for (1) quiet title and (2) trespass to try title. Finally, Plaintiff asserts that Cook is a necessary party to the suit.

The undersigned recommends that the Court (1) deny Wells Fargo's Motion to Strike Portions of Plaintiff's Summary Judgment Declaration [Dkt. No. 58]; (2) grant Trustee and Fay Servicing's Motion for Summary Judgement [Dkt. No. 33] and dismiss the noted claims with prejudice; and (3) grant Wells Fargo's Motion for Summary Judgement [Dkt. No. 48] and dismiss the noted claims with prejudice. Plaintiff's claim against Trustee and Fay to set aside the trustee's deed would then remain.

**Background**

I.    <u>The Mortgage Origination</u>

Plaintiff Anthony Good and his then-wife, Kimberly Good, entered into a mortgage loan agreement on August 29, 1997, executing a Deed of Trust and a Note payable to World Savings and Loan Association (later known as Wachovia Mortgage, FSB) to secure financing to purchase property (the "Property") in Duncanville, Texas. *See* Dkt. No. 1-7, Ex. G at 3-4.

II.    <u>The First Loan Modification in 2006</u>

After defaulting on his payment obligations under the loan, Plaintiff obtained and executed a loan modification from World Savings and Loan Association on July 7, 2006. *See* Dkt. No. 33-1, Ex. 1-C at 1.

On December 1, 2011, Wells Fargo informed Plaintiff that it acquired the mortgage through a merger. *See id*.

On August 16, 2013, Wells Fargo sent Plaintiff a Notice of Intent to Foreclose because the loan was in default. *See* Dkt. No. 33-1, Ex. 1-D at 1. This default was later presumably cured, though it is not referenced by any party.

III.    <u>The Second Loan Modification Application in 2016</u>

After obtaining the first loan modification, Plaintiff again defaulted on payment in April 2015 and on all subsequent payments. *See* Dkt. No. 33 at 4. In 2016, Plaintiff sought a second loan modification. *Id*.

On August 26, 2016, Breanna Courtney, a Wells Fargo Home Preservation

Specialist sent Plaintiff a letter noting that she would help Plaintiff with his "request for mortgage assistance." Dkt. No. 1-7, Ex. G, Sub. Ex. F at 1. Plaintiff subsequently sent in loan modification/loss mitigation application material, which Wells Fargo received. *See* Dkt. No. 1-7, Ex. G at 6. On September 21, 2016, Wells Fargo requested additional documents "to determine if [Plaintiff] was eligible for a loan modification." Dkt. No. 1-7, Ex. G, Sub. Ex. G at 1.

After Plaintiff submitted the loan modification material, he received foreclosure alerts, which he flagged for Breanna Courtney. *See* Dkt. No. 1-7, Ex. G at 7. Courtney "reassured Plaintiff not to worry and that a sale date was not scheduled." *Id.*

On October 18, 2016, Plaintiff received a letter noting that Wells Fargo had assigned the loan to Trustee. *See* Dkt. No. 1-7, Ex. G, Sub. Ex. H at 1. As of November 29, 2016, Trustee would be the lender, and Fay would take over as the servicer. *Id.*; Dkt. No. 33, Ex 1-E at 1.

On November 14, 2016, Wells Fargo sent a letter to Plaintiff noting that it had "received the documentation [Plaintiff] sent" and that "there may be additional documents required before [it could] determine if [Plaintiff] was eligible for mortgage assistance." Dkt. No. 1-7, Ex. G, Sub. Ex. J at 1. Further, Wells Fargo noted that "[if Plaintiff's] loan has been referred to foreclosure and [Plaintiff had] submitted all required documentation, [it would] not conduct a foreclosure sale on [the] loan while [Plaintiff's] documents [were] being reviewed." *See id.*

In a letter dated November 22, 2016, Wells Fargo stated that Plaintiff's

application could also be reviewed for consideration in obtaining the Home Affordable

Modification Program (HAMP) but that Wells Fargo had not received all requested

information from Plaintiff. *See* Dkt. No. 1-7, Ex. G, Sub. Ex. K at 1. Wells Fargo noted

that additional documents for consideration under HAMP must be submitted by

December 30, 2016.

On November 25, 2016, Wells Fargo sent Plaintiff a notice on the loan

modification stating:

> [A] review of [Plaintiff's] loan has been pending for a considerable period
> of time and [Wells Fargo has] not yet received all the required
> documentation from [Plaintiff.] Because [Plaintiff has] not provided the
> required documentation, [Wells Fargo is] unavailable to offer [Plaintiff]
> assistance options. It is important that [Plaintiff] contact [Wells Fargo]
> if [Plaintiff wishes] to continue the loan review process. Please note: If
> [Plaintiff] previously provided documents, they may no longer be valid
> and may need to be resent.

Dkt. No. 1-7, Ex. G, Sub. Ex. L at 1.

Plaintiff asserts that he sent further documentation to Wells Fargo, including

the required Quitclaim Deed, and that Wells Fargo acknowledged the receipt and

advised Plaintiff to contact Fay from that point on with any concerns. *See* Dkt. 1.7, Ex.

G at 9.

As noted, Fay then took over the servicing role as of November 29, 2016.

On December 22, 2016, Fay sent a letter to Plaintiff informing him that, "[i]n

order to be evaluated for all loss mitigation options available to [Plaintiff], [Plaintiff]

must submit a complete Loss Mitigation Application" and that the application was

currently missing the most recent W-2 Form, and proof of the current Homeowner's

5

Insurance. Dkt. No. 1-7, Ex. G, Sub. Ex. M at 1. Further, Fay noted that if Plaintiff's "loan was previously referred to foreclosure, [Fay] would continue the process until [Plaintiff] submitted a Complete Loss Mitigation Application," which needed to be submitted before the deadline of seven days prior to the foreclosure date. *Id*.

Plaintiff does not allege that he sent any further requested documents.

In a letter dated April 26, 2017, Fay sent Plaintiff a Notice of Acceleration and a Notice of Substitute Trustee Sale to take place on June 6, 2017. *See* Dkt. No. 33, Ex. 1-F at 1.

On June 6, 2017, the Property was sold to Aris Cook, *see* Dkt. No. 1-7, Ex. G, Sub. Ex. N at 1, who then executed a special warranty deed to Couch Enterprises on June 27, 2017, *see* Dkt. No. 1-7, Ex. G, Sub. Ex. O at 1.

Couch Enterprises subsequently filed a forcible detainer suit against Plaintiff. *See* Dkt. No. 1-7, Ex. G at 10.

As a result, Plaintiff then filed this lawsuit in state court on September 14, 2017, for (1) a violation of the Real Estate Settlement Procedures Act, (2) violation of the Texas Debt Collection Act, (3) wrongful foreclosure, and (4) negligent misrepresentation.

Defendants removed the case to this Court on October 27, 2017. *See* Dkt. No. 1. Plaintiff filed a Motion to Remand [Dkt. No. 12], which was denied by the Court. *See* Dkt. No. 29.

Trustee and Fay filed a Motion for Summary Judgement [Dkt. No. 32]. Wells

Fargo filed a separate Motion for Summary Judgement [Dkt. No. 48] and also filed an Objection to, and Motion to Strike Portions of Plaintiff's Summary Judgment Declaration [Dkt. No. 58].

## Legal Standards

I.  <u>Motion to Strike</u>

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The power to strike a pleading is within the Court's discretion but should be sparingly used. *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012). The motion to strike on grounds of immateriality or impertinence "'should be granted only when the pleading to be stricken has no possible relation to the controversy.'" *Id.* (quoting *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962)). Further, matter is not "scandalous" for purposes of Rule 12(f) if it is "directly relevant to the controversy at issue and are minimally supported in the record." *Id.* With regard to striking alleged defenses, "although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982).

"Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Jacobs v. Tapscott*, No. 3:04-cv-

1968-D, 2004 WL 2921806, at *2 (N.D. Tex. Dec.16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). Moreover, Rule 12(f) only applies to pleadings as defined by Federal Rule of Civil Procedure 7(a). *See, e.g.*, 5C Charles Alan Wright et al., FED. PRAC. & PROC. 1380 & n.8.5 (3d ed. 2012) ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)."); *Groden v. Allen*, No. 3:03-cv-1685-D, 2009 WL 1437834, at *3 (N.D. Tex. May 22, 2009) (Rule 12(f) "does not permit the Court to strike motions or matters within them because the rule applies only to pleadings").

## II.     Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the

nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks and footnotes omitted). The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all

justifiable inferences are to be drawn in [his or her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.") (internal quotation marks and footnote omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to

find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

## Analysis

I.    Wells Fargo's Motion to Strike [Dkt. No. 58]

Wells Fargo seeks to strike the excerpts from Plaintiff's Declaration filed in support of Plaintiff's Brief in Opposition to Wells Fargo's Motion for Summary Judgment [Dkt. No. 53], because it believes they are "speculative, not relevant, not based on the personal knowledge of Plaintiff, lack foundation, and are inadmissible opinion of a lay witness." *See* Dkt. 58 at 2-4. Specifically, Defendant asks the court to strike the following:

- Fourth paragraph on pages 2–3: "I later found out that this was not true as Wells Fargo offered to review me for loss mitigation options in 2016. Had I been able to refinance and/or modify my loan in 2014, I could have avoided bankruptcy and foreclosure because I did eventually fall behind on my payments. When I tried to make several payments to bring my account current, Wells Fargo refused to accept the payments."

- First paragraph on page 3: "As a result of this and an issue with the trustee, on July 26, 2016, the bankruptcy was dismissed without prejudice."

- Fourth paragraph on pages 4–5: "At the end of September of 2016, I hired JONES & ASSOCIATES LAW GROUP, LLC ('Jones & Assoc.') to communicate

11

with Wells Fargo and help me obtain a loan modification, loss mitigation, or other mortgage relief because I felt that Wells Fargo was misleading me."

- Second full paragraph on page 6: "But Wells Fargo never told me what specific documents were missing or needed to complete my loan modification application."

- First full paragraph on page 7: "As a result of Wells Fargo's conduct described above, I have suffered severe, anxiety, stress, and mental anguish worrying about the status of my loan. I suffered humiliation, sleepless nights, unable to control blood pressure, change of appetite, withdrawal from friends/family, lack of concentration, depression and anxiety. Also, my credit was damaged as a result of the bankruptcies and derogatory reporting by Wells Fargo."

Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Moreover, Rule 12(f) only applies to pleadings as defined by Rule 7(a). Although titled as a motion to strike, under Rule 12(f), the Motion to strike Portions of Anthony Good's Summary Judgment Declaration should be denied.

But Federal Rule of Civil Procedure 56(c)(4) provides that an affidavit submitted in support of or opposing a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Courts may strike – or, perhaps

12

more accurately, disregard – any affidavits that do not comply with Rule 56(c)(4)'s [then Rule 56(e)'s] standards. *See Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530 (5th Cir. 1992); *see also Joe Regueira, Inc. v. Am. Distilling Co.*, 642 F.2d 826, 829 (5th Cir. 1981) (holding that, for a court to consider summary judgment evidence, the evidence must be of the type that would admissible at the time of trial).

Here, the Court should reject Wells Fargo's objections. Plaintiff's Declaration appears to adequately meet Rule 56(c)(4)'s standards. Plaintiff's statements are rationally based on Plaintiff's own perception and concern his opinion on his ability to potentially avoid bankruptcy and his understanding of the reasons that the Bankruptcy Court provided for the case it dismissed. They appear to be rationally based on his own observations of underlying circumstances and rationally related to the subject at issue and, insofar as Plaintiff's understandings or belief may not be especially probative or determinative of any issue on summary judgment, those concerns go to the weight to be afforded this evidence, not its admissibility under Rule 56(c)(4).

Accordingly, the undersigned recommends that the court deny Wells Fargo's Motion to Strike.

II.    <u>Defendants' Motions for Summary Judgment [Dkt. Nos. 33 & 48]</u>

A.    Real Estate Settlement Procedure Act Violation Claim Against Trustee and Fay

In his first claim, Plaintiff contends that Trustee and Fay violated 12 C.F.R. § 1024.4(d) and (g). *See* Dkt. No. 1-7, Ex. C at 10. Plaintiff argues that because he

13

"submitted a complete loss mitigation application on or about September 21, 2016," well before the mandated cut off under 12 C.F.R. § 1024.4(g) of 37 days prior to the foreclosure sale, that the "June 6, 2017 [sic] foreclosure sale was in violation of RESPA" because the servicer was prohibited from moving forward with the foreclosure. *Id*. at 12. Further, Plaintiff asserts that Fay never provided a written notice informing "Plaintiff that he was denied for a trial or permanent loan modification, or any reason for said denial[,]" which was a violation of 12 C.F.R. § 1024.4(d). *Id*. Plaintiff avers that, under 12 C.F.R. § 1024.4(i) and a ruling out of the Eastern District of Michigan, Fay as a transferee servicer was bound by, and in violation of, 12 C.F.R. § 1024.4(d) and (g). *See id*. at 13.

In their Motion for Summary Judgment, Trustee and Fay assert that Section 1024.41 only apples to a borrower's first loss mitigation application and that Plaintiff brings this claim on his second loss mitigation application. Defendants Trustee and Fay argue that Plaintiff is precluded from bringing a RESPA claim because he defaulted on his payments under the 2006 Modification Agreement. *See* Dkt. No. 33 at 7-8. Trustee and Fay also argue that, even ignoring this, Plaintiff cannot satisfy the elements of Sections 1024.41(d) and (g) because he did not submit a complete loss mitigation application. *See id*. at 10. Finally, Defendants argue that "ignoring the legal impossibility of such claims" because of the prior modification agreement and the default thereon, Plaintiff fails on this claim as he has no evidence of damages. *See id*.

Plaintiff has not proffered evidence to support a RESPA or Regulation X claims.

The undersigned recommends that the Court grant Defendant's Motion for Summary Judgment as to this issue.

Section 1024.41 of the Code of Federal Regulations regulates loss mitigation procedures that loan servicers provide. *See* 12 C.F.R. § 1024.41. While "Regulation X prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a completed loan modification, or loss mitigation, application," *Miller v. Bank of New York Mellon*, 228 F. Supp. 3d 1287, 1290 (M.D. Fla. 2017), courts have held that "[a] servicer is only required to comply with the requirements of [Section 1021.41] for a single complete loss mitigation application for a borrower's mortgage loan account," *Allen v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:16-cv-0249-D, 2017 WL 3421067, at *4 (N.D. Tex. Aug. 9, 2017); *Bobbitt v. Wells Fargo Bank, N.A.*, No. CV H-14-387, 2015 WL 12777378, at *3 (S.D. Tex. May 7, 2015).

As Defendants argue, Plaintiff brings this RESPA violation claim having already obtained a prior loan modification in 2006. When Plaintiff defaulted on his payment obligations under the loan, he obtained and executed a loan modification from World Savings and Loan Association on July 7, 2006. *See* Dkt. No. 33-1, Ex. 1-C at 1. After receiving the first loan modification, Plaintiff again fell behind on his payments and in 2016 and sought a second loan modification. *See* Dkt. No. 33 at 4. He now brings a RESPA claim against Defendants, asserting that the foreclosure of the Property – while there was a loss mitigation application pending – constituted dual tracking,

which 12 C.F.R. § 1024.41 prohibits.

While "'[c]ourts have recognized a federal cause of action against a servicer for 'dual tracking' under [12 C.F.R. § 1024.41,]'"a party may only invoke the statute's protections during a single loss mitigation application. *See Pierson v. Ocwen Loan Servicing, LLC*, No. 3:15-cv-2314-N, 2017 WL 10110296, at *2 (N.D. Tex. June 22, 2017) (quoting *Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 F. App'x 314, 319 n.4 (5th Cir. 2015)). "The plain text of 12 C.F.R. § 1024.41 does not require compliance with 12 C.F.R. § 1024.41 for multiple loss mitigation applications." *Bobbitt*, 2015 WL 12777378, at *3.

Plaintiff attempts to sidestep this established law by asserting (1) that the procedural requirements of loss mitigation apply "only once per servicer" and (2) that first loss modification does not count because it was filed before the effective date of Section 1024.41 in January 2014. *See* Dkt. No. 45 at 13.

As to Plaintiff's first theory that the procedural requirements of loss mitigation apply "only once per servicer," Defendants correctly note that Plaintiff provides no evidence or law to support this naked assertion.

Moving to Plaintiff's second justification as to why he falls within the protections of Section 1024.41, Plaintiff asserts that, because the first loan modification was filed in 2006 before the rule in Section 1024.41 came into effect in 2014, it "does not count" in the tally for loss mitigation applications. Dkt. No. 45 at 13. Plaintiff bases his argument on two cases, both decided by other judges of this Court. *See Smith v.*

16

*JPMorgan Chase Bank, N.A.*, No. 3:17-cv-2107-K-BK, 2018 WL 879276, at *2 (N.D. Tex. Jan. 23, 2018), *rep. & rec. adopted*, 2018 WL 837762 (N.D. Tex. Feb. 13, 2018) (holding that "a loss mitigation application filed before the effective date of section 1024.41 does not count towards the 'single application' limitation"); *Parris v. Nationstar Mortg. LLC*, No. 3:15-CV-200-K-BK, 2017 WL 3951906, at *3 (N.D. Tex. Aug. 18, 2017), *rep. & rec. adopted*, 2017 WL 3911759 (N.D. Tex. Sept. 6, 2017) (holding that "any loss mitigation application submitted in connection with that agreement may not be considered when tallying the number of loss mitigation applications Plaintiff has submitted under RESPA").

Defendants contends that the United States Court of Appeals for the Fifth Circuit addressed the issue in *Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 F. App'x 314, 319 (5th Cir. 2015). The plaintiff in *Wentzell* made two loan modifications prior to the "single application limitation rule" taking effect in 2014. There, the Court of Appeals noted in dicta that "[t]he federal restrictions [in § 1024.41], however, apply only to a borrower's first loss mitigation application," regardless of the fact that they had happened prior to 2014. *Id*. Accordingly, the effective date did not cut off prior loan modifications from a tally under Section 1024.41.

While this footnote is only dicta, Defendants cited a number of district court case whose holdings reflected the Fifth Circuit's dicta: *Germain v., U.S. Bank National Association*, No. 3:15-cv-1694-M(BT), 2018 WL 1517860 at *6 (N.D. Tex. March 28, 2018); *Allen v. Wells Fargo Bank, N.A.*, No. 3:16-cv-249-D, 2017 WL 3421067, at *3

(N.D. Tex. Aug. 9, 20l7), *Higginbotham v. IndyMac Bank, F.S.B.*,No. 4:17-CV-00229,

2017 WL2691241 at *4 (E.D. Tex. June 1, 2017), *rep. & rec. adopted*, 2017 WL 2691241

(E.D. Tex. June 22, 2017); *Bobbitt v. Wells Fargo Bank, N.A.*, No. H-14-387, 2015 WL

12777378, at *3 (S.D. Tex. May 7, 2015).

Judge Hittner in *Bobbitt* held that "loan modifications applications submitted

prior to the effective date of this provision count toward the 'single application'

limitation set forth in [S]ection 1024.41(i)." 2015 WL 12777378, at *3. Judge Fitzwater

in *Allen* held that "[t]he plain text of 12 C.F.R. § 1024.41 does not require compliance

with 12 C.F.R. § 1024.41 for multiple loss mitigation applications – without excluding

loss mitigation applications submitted before January 10, 2014[,]" 2017 WL 3421067,

at *4 (N.D. Tex. Aug. 9, 2017) (quoting *Bobbitt*, 2015 WL 12777378, at *3), and that,

> [t]o interpret § 1024.41 otherwise would in effect be to read a key
> provision – the limitation on "Duplicative requests" of § 1024.41(i) – out
> of the regulation for an entire category of borrowers, without any clear
> intent from the Bureau of Consumer Financial Protection to do so. Such
> an interpretation would subject loan servicers to regulatory obligations
> to a potentially vast number of borrowers who had made loss mitigation
> applications before the regulation took effect, at a time when they were
> not themselves subject to the corresponding obligations that § 1024.41
> imposes on borrowers.

*Id*. And the presiding judge in the instant case has explained:

> [This] Court also agrees with Judge Fitzwater's holding in *Allen* that
> Section 1024.41 only requires a servicer to comply with its requirements
> for one application, and that it does not exclude applications submitted
> before its effective date of January 10, 2014.... To construe this section
> in the manner Plaintiff seeks would, as Judge Fitzwater explained, subject
> servicers to additional obligations "without any clear intent from the
> Bureau of Consumer Financial Protection to do so."

2018 WL 1517860, at *6 (internal citations omitted).

Here, after defaulting on his mortgage loan, Plaintiff was granted an initial loan modification. He defaulted again and brings a request for a second bite at the apple, where the law only affords one. As Defendants argue, the undisputed facts demonstrate, and the case law out of the Fifth Circuit and this district support, a determination that Trustee and Fay met their obligations under Section 1024.41.

Accordingly, the Court should dismiss this claim against Trustee and Fay with prejudice.

B.    Texas Debt Collection Act Violation Claims against all Defendants

Plaintiff next contends that Defendants violated the Texas Debt Collection Act ("TDCA"), Texas Financial Code §§ 392.304(a)(3) and 392.301(a)(8).

Plaintiff asserts that Wells Fargo violated Section 392.304(a)(3) when it "misled Plaintiff to believe that it had loss mitigation options, foreclosure prevention programs, and a 'home preservation specialist'" and that "submitting sensitive information and materials would lead to Plaintiff preserving his home." Dkt. No. 1-7, Ex. C at 16.

And Plaintiff asserts that Fay violated Section 392.304(a)(8) "when it noticed a foreclosure sale despite Plaintiff's pending loss mitigation application and review ... [that] amounted to dual tracking, which is prohibited by the law." *Id*.

         i.     Wells Fargo's Motion for Summary Judgment should be granted as
                to a TDCA violation under Texas Financial Code §§ 392.304(a)(3).

Wells Fargo argues that Plaintiff's TDCA claim fails because Plaintiff cannot produce evidence to show that Wells Fargo offered a loan modification "in order to" induce Plaintiff to divulge sensitive information, and therefore would not be able to satisfy the test under Section 392.001. *See* Dkt. No. 49 at 10-11. And Wells Fargo contends that it should be granted summary judgment on this claim where (1) "Texas courts have held that allegations concerning loan modifications do not constitute collection activity and are not representations, or misrepresentations, of the amount or character of a debt"; (2) Plaintiff "has no evidence that the misrepresentations relating to matters such as 'loss mitigation options' and 'Plaintiff preserving his home' were made during debt collection, which is required for a TDCA claim"; (3) "the law is clear that discussions regarding loan modification or a trial payment plan are not representations or misrepresentations of the amount or character of the debt actionable under the TDCA"; (4) the "TDCA does not prevent a debt collector from 'exercising or threatening to exercise a statutory right of seizure, repossession, or sale that does not require court proceedings'"; and (5) Plaintiff has not shown evidence that he suffered any damages due to the violation of the TDCA. *Id.* at 11-14.

To state a claim under the TDCA, a plaintiff must allege that: (1) the debt at issue is a consumer debt; (2) the defendant is a "debt collector" within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as

result of the defendant's wrongful act. *See* TEX. FIN. CODE §§ 392.001 *et. seq*.

Under Section 392.301(a), in debt collection, "a debt collector may not use threats, coercion, or attempts to coerce that [involves] ... threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a). The Fifth Circuit has held that mortgage "servicers and assignees are debt collectors, and therefore are covered, under the TDCA." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (emphasis in original); *accord Starling v. JPMorgan Chase Bank, N.A.*, No. 3:13-cv-777-M-BN, 2013 WL 4494525, at *7 (N.D. Tex. Aug. 22, 2013) ("Because Defendant is attempting to collect on the mortgage note and foreclose on the Property, it is a debt collector under the TDCA.").

Section 392.304(a)(3) prohibits debt collectors from using a fraudulent, deceptive, or misleading representation, which involves "representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer." TEX. FIN. CODE § 392.304(a)(3).

Plaintiff contends that Wells Fargo "misled Plaintiff to believe that it had loss mitigation options, foreclosure prevention programs, and a 'home preservation specialist'" and that "submitting sensitive information and materials would lead to Plaintiff preserving his home." Dkt. No. 1-7, Ex. C at 16. But, as Wells Fargo correctly asserts, Plaintiff "does not contend that Wells Fargo offered a loan modification 'in order to' induce him to divulge such information. Moreover, Plaintiff has no evidence of this." Dkt. No. 49 at 11. For this reason, summary judgment should be granted on

this claim. *See* TEX. FIN. CODE § 392.301(a)(8); *Kennedy v. Wells Fargo Bank*, N.A., No. SA-11-CA-957-FB, 2012 WL 13028628, at *6 (W.D. Tex. Oct. 23, 2012) (dismissing a Section 392.304(a)(3) claim where the Plaintiff not contend that the defendant offered a loan modification "in order to " induce" the plaintiff to divulge personal information).

Further, as Wells Fargo argues, Plaintiff's claim fails "because Plaintiff has no evidence that the alleged misrepresentations were made during debt collection, as required under the statute." Dkt. No. 57 at 2. Under the TDCA, debt collectors are prohibited from threatening to take an action prohibited by law, or from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See* TEX. FIN. CODE § 392.301(a)(3). But "[c]ommunications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its modification." *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015).

Because the loan modification communications on which Plaintiff bases this claim are not considered a collection of debt, they does not fall within the TDCA's protections. And, in response to the motion, Plaintiff has not met his burden of showing that there are any genuine issues of material fact as to this issue.

For these reasons, the Court should grant Wells Fargo's Motion for Summary Judgment as to this claim.

    ii.    Trustee and Fay's Motion for Summary Judgment should be granted as to a TDCA violation under Texas Financial Code § 392.301(a)(8).

Plaintiff next asserts that Fay violated Section 392.304(a)(8) "when it noticed a foreclosure sale despite Plaintiff's pending loss mitigation application and review ...

[that] amounted to dual tracking, which is prohibited by the law." *See* Dkt. No. 1-7, Ex. C at 16. This claim, however, appears to have been made in error.

In Plaintiff's original state court complaint, he includes law from three sections of the TDCA: Texas Financial Code §§ 392.304(a)(3), 392.304(a)(14), and 392.301(a)(8). Sections 392.304(a)(3) and 392.304(a)(14) relate to the two claims that Plaintiff brought against Wells Fargo above, the second of which – Section 392.304(a)(14) – he later withdrew. That leaves Section 392.301(a)(8): "In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices ... threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8).

But, when Plaintiff articulated his claim against Fay, he alleged that Fay violated Section 392.304(a)(8) "when it noticed a foreclosure sale despite Plaintiff's pending loss mitigation application and review ... [that] amounted to dual tracking, which is prohibited by the law." Dkt. No. 1-7, Ex. C at 16. Section 392.304(a)(8) mandates that:

> [I]n debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices ... misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding.

TEX. FIN. CODE § 392.304(a)(8). Section 392.304(a)(8) prohibits mortgage services from making misrepresentations about a debt. A plaintiff must show that the defendant made a misrepresentation that led him to be unaware (1) that he had a mortgage debt, (2) of the specific amount she owed, or (3) that he had defaulted. *See Miller*, 726 F.3d

23

at 723.

In their Motion for Summary Judgment, Trustee and Fay address the Section 392.304(a)(8) violation claim but also provide underlying argument as to why their actions were not prohibited by law. Under the 392.301(a)(8) claim, Trustee and Fay assert that Plaintiff has not and cannot come forward with evidence to establish a violation of the TDCA by Fay. And, they argue that, to constitute a misrepresentation under the TDCA, Defendants must have made a false or misleading statement, which Trustee and Fay assert that Plaintiff have not and cannot show.

Instead of showing how the *Miller* standard has been met, Plaintiff appears to abandon this claim in his response to the motion for summary judgment. Plaintiff does not point to or support any facts demonstrating that Trustee and Fay either misrepresented the character, extent, or amount of debt or that used false representation or deceptive means to collect the debt. *See Woodcock v. Chase Home Fin. LLC*, No. H-11-1199, 2012 WL 393260, at *4 (S.D. Tex. Feb 3, 2012) (in order to state a claim under Section 392.304, a plaintiff must state the "who, what, when, where, and how" regarding the alleged violation). Plaintiff has failed to show that any genuine issue of material fact exist.

Instead of addressing the Section 392.304(a)(8) claim, Plaintiff attempts to essentially amend his complaint by arguing a violation of Section 392.301(a)(8) in his response to the motion for summary judgment. Section 392.301(a)(8) prohibits a debt collector from using "threats, coercion, or attempts to coerce" that involve "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8).

24

Trustee and Fay address this claim in their reply and argue that "Plaintiff bases his entire TDCA argument on allegations that Defendants violated RESPA or Regulation X" and that, because "Plaintiff's claims for RESPA and Regulation X violations fail, ... Plaintiff's TDCA claims fail as well." Dkt. No. 47 at 7. And they argue that foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage and that it is "undisputed that Plaintiff was in default." Dkt. No. 33 at 11.

Here, insofar as Plaintiff makes a new claim under the TDCA that was not made in his complaint, the amendment was not made as a matter of course, *see* FED. R. CIV. P. 15(a)(1), and Plaintiff has not shown evidence of seeking "opposing party's written consent or the court's leave" to amend its complaint, FED. R. CIV. P. 15(a)(2). As such, the Court should disregard this newly-made claim.

Even if the Court were to evaluate such a claim, it would not survive summary judgment here. As Trustee and Fay argue, "foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage." *Wildy v. Wells Fargo Bank, N.A.*, No. 3:12-cv-1831-BF, 2012 WL 5987590, at *3 (N.D. Tex. Nov. 30, 2012); *see also Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 831 (5th Cir. 2015) ("[In *McCaig*], we reasoned that the mortgagee would not have violated that subsection if it had retained its contractual right to foreclose and the mortgage was in fact in default. Here, [the mortgagee] never waived its contractual right to foreclose, and [the mortgagor] was in default at all times after October 2007. Thus, irrespective of any statutory notice requirements, [the mortgagee] did not violate Section

25

392.301(a)(8) by threatening to foreclose."); *see also Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-cv-3519, 2012 WL 1059043, at *7 (S.D. Tex. March 28, 2012) (dismissing a borrower's claim under the TDCA, based on a violation of HAMP, because foreclosing on a borrowers home after admittedly defaulting on their loan is not an action prohibited by law); *Watson v. Citimortgage, Inc.*, 4:10-cv-707, 2012 WL 381205, at *8 (E.D. Tex. Feb.3, 2012) (noting that "[f]oreclosure is not an action prohibited by law.").

Here, Plaintiff himself admitted that he was in default: "Plaintiff did eventually fall behind on payments." Dkt. No. 1-7, Ex G at 5. Aside from Plaintiff's claims that Defendants' actions of seeking to foreclose while the loss mitigation application was under review "amounted to dual tracking, which is prohibited by law," Dkt. No. 1-7, Ex. G at 16, Plaintiff makes no other attempt to provide legal justification for this assertion in his complaint, or his response to the motion summary judgment.

Because Plaintiff has not shown how Trustee and Fay made an action prohibited by law – under either a RESPA or foreclosure theory – this claim cannot survive summary judgment where Plaintiff has not shown there to be any genuine issue of material fact as to this issue.

The Court should grant Trustee and Fay's Motion for Summary Judgment on this claim.

C.   Wrongful Foreclosure Claim (or Suit to Set Aside Foreclosure Sale and Cancel Trustee's Deed) Against Trustee and Fay

As to the third claim, Plaintiff alleges that Fay "failed to comply with the Deed of Trust contract and RESPA and foreclosed despite being prohibited by law from doing

so." Dkt. No. 1-7, Ex. C at 16. As such, if Plaintiff remains in possession, he seeks to have the June 6, 2017 foreclosure set aside, but, if Plaintiff is dispossessed of his home, he seeks damages under a claim of wrongful foreclosure.

Trustee and Fay assert that Plaintiff has not alleged facts that could establish a wrongful foreclosure cause of action for failure to satisfy the necessary elements. And Trustee and Fay argue that Plaintiff's claim has not matured because, as he admits, he is still in possession of the Property. *See* Dkt. No. 45 at 21.

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, or unfairness in the conduct of a foreclosure sale. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) ("Under Texas common law, a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property."). The Fifth Circuit has explained that "Texas law recognizes three elements for a wrongful foreclosure claim: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price"; that "[a] claim of wrongful foreclosure cannot succeed ... when no foreclosure has occurred"; and that "a party cannot state a viable claim for wrongful foreclosure if the party never lost possession of the Property." *Smitherman v. Bayview Loan Servicing, LLC*, 727 F. App'x 787, 790 (5th Cir. 2018) (internal quotation marks and citations omitted).

Here, a foreclosure took place, but Plaintiff is still in possession of the Property pending the outcome of the forcible detainer suit that Couch Enterprises filed. *See* Dkt. No. 1-7, Ex. G at 10.

27

The undersigned will analyze this as (1) an "immature" claim, (2) a regular wrongful foreclosure claim, and (3) a claim to set aside the foreclosure sale.

As to the first scenario – an "immature" claim – Trustee and Fay argue that Plaintiff's claim has not yet matured because Plaintiff is still in possession of the Property and that therefore the claim should be dismissed. Courts in this circuit have dismissed wrongful foreclosure claims where Plaintiff "cannot show that they suffered any damages for the alleged wrongful foreclosure since they are still in possession of their house." *Smith v. Nat'l City Mortg.*, No. A-09-CV-881 LY, 2010 WL 3338537, at *13 (W.D. Tex. Aug. 23, 2010). Similar reasoning justifies courts not recognizing attempted wrongful foreclosure as a valid claim for the lack of damages:

> In a wrongful foreclosure suit the measure of damages is the difference between the value of the property in question at the date of the foreclosure and the remaining balance due on the indebtedness. This measure of damages is based upon a tort theory of recovery to compensate the aggrieved for his lost possession of the property. Because recovery is premised upon one's lack of possession of real property, individuals never losing possession of the property cannot recover on a theory of wrongful foreclosure.

*Smith v. Nat'l City Mortg.*, No. A-09-CV-881 LY, 2010 WL 3338537, at *14 (W.D. Tex. Aug. 23, 2010).

As to this first scenario, Plaintiff has not shown there to be any genuine issues of material fact as to whether he remains in possession of the Property.

Under the second scenario, courts look to see – absent the lack of damages, as noted above – if the plaintiff could show that there are any genuine issues of material fact as to her wrongful foreclosure claim. But, in his complaint and response to the

28

motion for summary judgment, Plaintiff make no real attempt to show that he meets the standard for wrongful foreclosure to survive the motion for summary judgment.

Instead, he argues that he does not need to show a grossly inadequate selling price under the ruling in *Charter Nat. Bank – Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App. – Houston [14th Dist.] 1989, writ denied). This is incorrect.

As the Fifth Circuit held in *Miller v. BAC Home Loans Servicing, L.P.*, the full three-part test – and the requirement to show a grossly inadequate selling price – applies to all cases, except for "a particularized exception whereby the plaintiff-mortgagor may avoid showing a grossly inadequate selling price if he or she alleges that the defendant-mortgagee (lender) deliberately 'chilled' the bidding at the foreclosure sale." 726 F.3d 717, 727 (5th Cir. 2013). Plaintiff has made no showing that that exception applies in the instant case.

Plaintiff has failed to show that there are any genuine issues of material fact as to his wrongful foreclosure claim under this scenario.

The third scenario requires an analysis of Plaintiff's claim as seeking set aside the foreclosure sale. Plaintiff asserts that "[a] foreclosure sale not conducted in accordance with the terms of the deed of trust gives rise to a cause of action to set aside the sale and the resulting trustee's deed." Dkt. No. 45 at 21 (quoting *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 592 (Tex. App. – Dallas 2012, no pet.)).

Trustee and Fay, however, do not specifically address the claim to set aside the trustee's deed in their summary judgment motion or reply. The undersigned reads Defendants' briefing on the motion that they "file this Brief in Support of Motion for

Summary Judgment on all claims of Plaintiff" to mean that they intended to argue for summary judgment on the claim to set aside the trustee's deed. While not directly naming the alternative claim, Trustee and Fay do argue generally under the wrongfully foreclosure section that Plaintiff has made a claim based on an unspecified breach by Fay of the Deed of Trust. *See* Dkt. No. 33 at 12.

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted). Trustee and Fay have not met this burden as to Plaintiff's claim analyzed as a claim to set aside the foreclosure sale.

Analyzing the parties' arguments and evidence in a light most favorable to the non-moving party, the undersigned recommends that the court grant the Defendant's Motion for Summary Judgment on the wrongful foreclosure claim but hold that Trustee and Fay have failed to meet their burden in identifying the claim to set aside trustee deed and demonstrating the absence of a genuine issue of material fact as to that claim.

D.    Negligent Misrepresentation Against Wells Fargo

Finally, in support of his claim for negligent misrepresentation, Plaintiff asserts

30

that Wells Fargo "misrepresented that it would work with Plaintiff to avoid foreclosure, provide Plaintiff with pertinent information in a timely manner, and be someone Plaintiff could rely on." Dkt. No. 1-7, Ex. C at 20. Plaintiff asserts that, as a result, he suffered pecuniary loss in "lost time away from work to send in a new loan modification," "lost time trying to contact a 'dedicated loan specialist,'" and "the cost of photocopying and faxing documents, and otherwise communicating with Wells Fargo." *Id*. at 21.

Wells Fargo contends that Plaintiff's negligent misrepresentation claim fails because (1) Plaintiff has shown no evidence that the alleged misrepresentation concerned guidance for a business, (2) Plaintiff's claim is barred by both the economic loss rule and the statute of frauds, (3) promises of future conduct are not actionable under negligent misrepresentation, and finally, and (4) "Plaintiff has no evidence that his reliance on any representation by Wells Fargo was justified." *See* Dkt. No. 49 at 15-20.

Plaintiff asserts that there are genuine issues of material fact as to Plaintiff's negligent misrepresentation claim. He argues that there "various renditions of the elements of negligent misrepresentation," *see* Dkt. No. 53 at 14, and asks the Court to instead look to standards the Court of Appeals of North Carolina used in *Crawford v. Mintz*, 653 S.E.2d 222 (N.C. Ct. App. 2007), *rev'd*, S.E.2d 738 (N.C. 2008), and the standards the Court of Appeal of Louisiana used in *Cook v. Am. Gateway Bank*, 49 So. 3d 23, 32 (La. Ct. App. 1st Cir. 2010). Under these standards, Plaintiff asserts that

"Wells Fargo had a legal duty to supply correct information to Plaintiff." Dkt. No. 53 at 15.

But a claim for negligent misrepresentation under established Texas law requires Plaintiff to satisfy four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *See Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005).

Here, as Wells Fargo argues in its reply, Plaintiff has failed to meet the second element in showing that the information was "for the guidance of others in their business." *Gen. Elec. Capital Corp.*, 415 F.3d 391 at 396. On this ground alone, Wells Fargo is entitled to summary judgment on this claim. *See Ayres v. Parker*, No. SA-12-CV-621-XR, 2013 WL 4048328, at *14 (W.D. Tex. July 29, 2013) (holding that a defendant was entitled to summary judgment where the plaintiff had failed to adduce evidence demonstrating that any of the representations were made for the guidance of others in a business).

Even if the Court were to read the standard liberally, Wells Fargo would still be entitled to summary judgment. In attempting to establish evidence of genuine issues of material fact, Plaintiff focuses on two issues: (1) the August 26, 2016, introductory letter from Breanna Courtney, *see* Dkt. No 54-8, Ex. 1-G at 43-46, and (2) Wells Fargo's

32

misrepresentation of Plaintiff's payments to his account.

As to the introductory letter, Plaintiff argues that "Wells Fargo made false representations [in the letter] to Plaintiff regarding his loan account in the course and scope of their business by representing that it would work with Plaintiff to avoid foreclosure, provide Plaintiff with pertinent information in a timely manner, and be someone Plaintiff could rely." Dkt. No 53 at 15. But, viewing all facts and drawing all reasonable inferences in the light most favorable to Plaintiff and resolving all disputed factual controversies in his favor, this does not establish that Wells Fargo misrepresented an existing fact. "To establish a negligent misrepresentation claim, the plaintiff must also prove that the defendant misrepresented an existing fact rather than a promise of future conduct." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex. App. – Houston [1st. Dist.] 2007, no pet.); *accord Kinder v. Fed. Nat'l Mortg. Ass'n*, No. 3:13-cv-4617-G-BN, 2014 WL 4271149, at *7 (N.D. Tex. Aug. 29, 2014). Plaintiff has not shown how the statements are not promises of future conduct.

And Plaintiff misstates the actual promise. In the document that he references, the full quote reads: "Working together, your specialist will help you understand the options available to you, and do everything possible to help you avoid the foreclosure of your home." Dkt. No 54-8, Ex. 1-G at 46. The promise was to not to prevent foreclosure – it was to do "everything possible to help [Plaintiff] avoid the foreclosure" of his home.

As to the misrepresented payments, Plaintiff asserts that Wells Fargo reflected Plaintiff's payments on his monthly statements as "unapplied." Dkt. No 54-8, Ex. 1-E

33

at 37-30. But, as Wells Fargo argues, under Texas law, if a tort claim arises solely from the parties' contractual relationship, the tort claim is not allowed. *See DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625-26 (N.D. Tex.2011). The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 12 (Tex.2007) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex.1991)). "That is, 'a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim.'" *McDaniel v. JPMorgan Chase Bank*, N.A., No. 1:12-cv-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (quoting *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App. – Houston [1st Dist.] 2007, pet. denied)). "Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *Id.* (quoting *Lamar Homes, Inc.*, 242 S.W.3d at 13).

"In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney Co., Inc.*, No. 3:05-cv-2499-L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45-47 (Tex.1998)); *see also DeLanney*, 809 S.W.2d at 494-95.

34

Here, the alleged economic loss arises solely from Plaintiff and Wells Fargo's contractual relationship under the mortgage agreement. Plaintiff bears the burden to establish evidence of an independent injury. *See McDaniel*, 2012 WL 6114944, at *7. Plaintiff has not established an independent injury and instead "attempts to circumvent the economic loss doctrine by alleging a variety of damages unrelated to the Note and Deed of Trust including ... lost time ... are not sufficient to avoid the economic loss doctrine in this case." *Wiley v. U.S. Bank, N.A.*, No. 3:11-cv-1241-B, 2012 WL 1945614, at *12 (N.D. Tex. May 30, 2012).

"Even without such considerations, it is clear Plaintiff's negligent misrepresentation claim and [his] alleged damages flow solely from the obligations created by the Note and Deed of Trust and would not exist but for the contractual relationship between the parties." *Id.*; *see also accord Kinder*, 2014 WL 4271149, at *7; *Williams v. Federal Nat'l Mortg. Ass'n*, No. 2:11-CV-157-J, 2012 WL 443986, at *4 (N.D. Tex. Feb 13, 2012) (holding that Plaintiff's negligent misrepresentation claim arising out of alleged breaches of the loan modification were barred because, under Texas law, "the failure to perform the terms of a contract is a breach of contract, not a tort" (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986))).

Because Plaintiff has failed to show that there are any genuine issues of material fact as to his negligent misrepresentation claim, the Court should grant Wells Fargo's Motion for Summary Judgement as to this claim.

## Recommendation

For the reasons explained above, the Court should (1) deny Wells Fargo's Motion

to Strike Portions of Plaintiff's Summary Judgment Declaration [Dkt. No. 58]; (2) grant Trustee and Fay Servicing's Motion for Summary Judgement [Dkt. No. 32] and dismiss the Consumer Financial Protection Bureau Servicing Guidelines violation, Texas Debt Collection Act violation, wrong foreclosure, and negligent misrepresentation claims with prejudice; and (3) grant Wells Fargo's Motion for Summary Judgement [Dkt. No. 48] and dismiss the Real Estate Settlement Procedure Act violation, Texas Debt Collection Act violation, and negligent misrepresentation claims with prejudice. Plaintiff's claim against Trustee and Fay to set aside the trustee's deed would then remain.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

36

DATED: January 28, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE